IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JUDITH DAVIS**<br>3546 19th Street South<br>Arlington, VA 22204<br><br>Plaintiff,<br><br>v.<br><br>**APPLIED DEVELOPMENT, LLC**<br>618 Ploy Street<br>Baltimore, MD 21202<br><br>**SERVE: BIFFREY BRAXTON**<br>145 Ostend Street<br>Baltimore, MD 21230<br><br>Defendant. | Civil Action No.<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff JUDITH DAVIS, by and through her undersigned counsel, hereby complains of Defendant APPLIED DEVELOPMENT, LLC, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to recover damages for unlawful discrimination, retaliation, and harassment/hostile work environment based on her race (African American), color (black), and sex (female) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and Maryland Fair Employment Practices Act, Md. Code. Ann. §§ 20-601 *et seq.* ("MFEPA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §

1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate pursuant to 28 U.S.C. § 1391 because the violations giving rise to Plaintiff's claims occurred here, and Defendant resides within this judicial district.

## THE PARTIES

5. Plaintiff resides in Virginia and formally worked for Defendant at its headquarters in Maryland.  At all relevant times, Plaintiff was Defendant's employee within the meaning and entitled to the protections of Title VII and MFEPA.

6. Defendant is a limited liability company formed under the laws of the State of Maryland and has a principal place of business at 618 Ploy Street, Baltimore, Maryland.  At all relevant times, Defendant was Plaintiff's employer within the meaning and subject to the requirements of Title VII and MFEPA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff exhausted her administrative remedies by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 3, 2021.

8. On March 8, 2022, the EEOC issued the Notice of Right to Sue letter.  Plaintiff files this lawsuit within 90 calendar days of her receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

### *Background*

9. Plaintiff is a black, African American female.

10. On July 23, 2018, Plaintiff began working for Defendant as a Senior Project Manager/Senior Disability Expert.

11. Throughout her tenure, Plaintiff reported to Chief Executive Officer Kimberly Citizen.

12. Beginning on November 1, 2019, Plaintiff also reported to Chief Operations Officer Biffrey Braxton.

13. Both Ms. Citizen and Mr. Braxton conducted Plaintiff's performance appraisals and weekly check-ins and otherwise supervised Plaintiff throughout the relevant time period.

14. At all relevant times, Ms. Citizen and Mr. Braxton were aware of Plaintiff's color, race, and sex, all of which are obvious based on Plaintiff's physical appearance.

### ***Defendant assigned Plaintiff to support Department of Defense contracts.***

15. Plaintiff was assigned to work on Department of Defense ("DoD") Initiatives to Support Employment of Individuals with Disabilities.

16. Plaintiff's job responsibilities included leading and managing Defendant's contract with the DoD Office of Diversity, Equity, and Inclusion ("ODEI") at the Pentagon. She also managed a split contract, pursuant to which Defendant provided services at both the Pentagon and a newly formed office, Diversity Management Operations Center ("DMOC") at the Mark Center in Alexandria, VA.

17. In addition to supporting these contracts and meeting client demands, Plaintiff was required to report to Defendant's Headquarters twice a week to work on non-contract related matters.

### ***Defendant allowed federal managers and employees to harass Plaintiff.***

18. Upon Plaintiff's arrival, she was immediately subjected to harassment by federal managers and employees of Defendant based on her race and sex.

19. Specifically, Randy Cooper, DoD Director of Disability Policy and Compliance, constantly harassed Plaintiff by threatening her employment status, screaming and yelling at her, and undermining Plaintiff's role as a black female manager. Mr. Cooper did not treat white males

this way, and he demanded to work with only white male employees.

20. Mr. Cooper made frequent negative and disparaging comments to Plaintiff about her staff, specifically regarding female employees, employees of color, and employees with disabilities.

21. Mr. Cooper constantly yelled at Plaintiff within earshot of the entire office. Afterwards, Plaintiff's team members, as well as other contract employees, would inquire whether she was okay.

22. DoD Senior Managers Michael Sena and Norvel Dillard both participated in and condoned the pattern of discriminatory behavior towards females of color.

23. Plaintiff also witnessed federal managers, including Mr. Cooper, making repeated racist and sexist comments to other black female employees. These comments included comparing specific black women to exotic dancers. The federal managers made comments about black employees' clothes and hair, called them names, and undermined their leadership.

24. The federal managers also harassed a female contractor who had a disability. They ridiculed her repeatedly, loudly, and publicly. The federal managers kicked her out of meetings, antagonized her, accused her of being negligent, and requested her removal from then contract, leading to her termination at the end of the contract year.

25. Plaintiff never observed federal managers treating white male employees in this manner.

### *Plaintiff engaged in protected activity by reporting discrimination go Defendant.*

26. Between July 2018 and August 2019, Plaintiff reported the hostile work environment and harassment to Ms. Citizen and Mr. Braxton during weekly check-in meetings and in the monthly reports that she submitted.

27. Ms. Citizen and Mr. Cooper discouraged Plaintiff from including her concerns about discrimination in her monthly reports. However, after November 2018, Plaintiff resumed

reporting her concerns in the monthly reports because the new DoD Contracting Officer Representative, Sam Drummond, encouraged her to do so.

28. On February 13, 2019, Plaintiff requested a meeting with Defendant's senior leaders, including Ms. Citizen and her chief of staff, Christopher Jones to discuss the harassment by the federal managers.

29. Mr. Jones then scheduled a meeting with Mr. Cooper, Mr. Sena, and Mr. Dillard to address Plaintiff's complaints about discrimination. Plaintiff asserted that she and other black female employees were being harassed and discriminated against because of their race and sex.

30. The federal managers claimed their comments were just "jokes," and Mr. Cooper said that Plaintiff and other black female employees that they were "too sensitive."

31. Although Mr. Jones objected to the federal managers' illegal harassment, Ms. Citizen did not say anything during the meeting to oppose the discrimination or otherwise support Plaintiff.

32. Mr. Jones advised Ms. Citizen to file a complaint with the Small Business Administration. However, Ms. Citizen declined to do so because she feared that Mr. Cooper would not give Defendant a new contract.

33. Shortly thereafter, Ms. Citizen terminated Mr. Jones' employment.

34. Instead of taking corrective action to stop the ongoing discrimination, Ms. Citizen and Mr. Braxton allowed the harassment and hostile work environment to continue.

### *Federal managers continued to harass Plaintiff.*

35. Despite Defendant's refusal to take corrective action, Plaintiff continued to object to discrimination and harassment. In response, Mr. Cooper threatened to end the contract or remove Plaintiff from the contract.

36. During all-hands staff meetings, Mr. Cooper and Mr. Sena frequently undermined Plaintiff

and other female employees of color by making false accusations about their performance and work results.

37. Afterward, Mr. Sena came to Plaintiff's desk in the far corner of the office, put his hands on Plaintiff's back and shoulders, pretending to comfort her and asking if she was "ok."

38. Plaintiff and other female employees of color were regularly excluded from subject matter expert discussions pertaining to their responsibilities, while white employees with non-subject matter expert roles were included.

### *Defendant failed to fairly compensate Plaintiff for increasing profits and winning new work.*

39. When an employee won new business, it was Defendant's regular practice to give the employee a bonus in the amount of three percent of the net profits of the contract.

40. For example, on information and belief, Defendant gave Cezar Plaza, a male employee, a bonus of three percent of the net profits (*i.e.,* $16,550.00) of a contract that resulted from his efforts.

41. Based upon information and belief, other similarly-situated male employees, including Phillip Lester, also received three-percent bonuses for winning new business under similar circumstances.

42. Around the end of the 2019 performance year (fiscal year ending 30 September) and as a direct result of Plaintiff's efforts, Defendant was awarded a brand-new three-year contract worth more than $4,000,000.00. In fact, the client stated that Defendant won the contract based on Plaintiff's performance and leadership.

43. When Plaintiff inquired about a bonus, Mr. Braxton grew agitated and short with her. He refused to give her a bonus or any other reward or recognition.

44. Eventually, and after substantial effort on Plaintiff's part to be treated equally, Defendant gave

Plaintiff a bonus of approximately $6,000.00, which was significantly less than three percent of the net profits of the contract she secured.

### *Defendant denied Plaintiff her semi-annual bonus.*

45. In January 2020, Defendant denied Plaintiff her semi-annual bonus that she was contractually due, despite her superior performance on a contract that had recently closed and resulted in a substantial net profit due to her efforts.

46. As part of her compensation, Defendant agreed to give Plaintiff a 12-percent annual performance bonus payable in two increments.

47. Despite her superior performance during the year, resulting in substantial profit on an existing contract, as well as winning a new contract, Plaintiff did not receive the bonus when it was due in January 2020.

48. Plaintiff inquired about the bonus during a phone call with Mr. Braxton and Ms. Citizen. They responded, stating something to the effect of: "While it may be misleading to believe that you are owed the bonus bi-annually, that was only applicable during the first year of employment."

49. Plaintiff asked why they had not mentioned that during her last performance review, when she was told her performance was outstanding, and why Defendant had not issued her an amended employment contract.

50. Mr. Braxton replied that if Plaintiff won more contract opportunities, they would discuss other ways to reward her.

### *Defendant retaliated against Plaintiff by berating her and increasing her workload.*

51. During her November 2019 performance review meeting with Mr. Braxton and Ms. Citizen, Plaintiff raised unresolved issues with the ongoing discriminatory and hostile environment.

52. In response, both Mr. Braxton and Ms. Citizen tag-teamed Plaintiff, repeatedly interrupted

her, dismissed her statements, implied that she was a liar, and refused to let her speak while berating her. Despite this, Plaintiff received a positive performance appraisal and a pay increase of $5,000.00.

53. Around this time, Defendant increased Plaintiff's workload by tasking her to a new contract, Disability Programs for Employment of Individuals With Disabilities ("DMOC"). As a result, she became responsible for supervising several additional employees from another contract at a different federal agency.

54. However, Defendant did not give extra responsibilities to the only other project manager, Mr. Lester, a white male. On information and belief, Mr. Lester did not complain about discrimination or engage in protected activity.

55. During a meeting on December 3, 2019, Mr. Braxton berated Plaintiff in front of a newly hired colleague and within earshot of nearly the entire office. When a white male employee repeated the same information as Plaintiff, Mr. Braxton accepted the information and moved on without question.

56. Mr. Braxton and Ms. Citizen did not scrutinize and mistreat male project managers, even those who, unlike Plaintiff, failed to adequately lead their contracts.

*__Defendant fired Plaintiff only weeks after receiving a formal letter alleging discrimination.__*

57. In or around March 2020, Plaintiff, through counsel, sent Defendant a letter opposing discriminatory treatment and hostile work environment.

58. Following several weeks of negotiations and communications between counsel, on May 12, 2020, Defendant terminated Plaintiff's employment for alleged "performance issues associated with [her] management and leadership style."

59. Defendant's purported reason for firing Plaintiff is false and pretextual for discrimination.

60. Plaintiff never missed any deadlines or requirements, despite the hostile work environment and lack of support.

61. Although the contract required Defendant to staff six full-time employees for DoD's program, Defendant provided only two and a half full-time employees. Despite Defendant's failure to provide adequate staffing, Plaintiff successfully planned, executed, and managed the program.

62. Defendant did not similarly harass and mistreat employees who were white and/or male, and who did not complain about discrimination.

63. Based on the foregoing, Defendant discriminated against Plaintiff and subjected her to a hostile work environment based on her race, color, and sex, and in reprisal for her protected activity, in violation of Title VII and the MFEPA.

64. Plaintiff sustained emotional distress and mental anguish has a result of the foregoing unlawful behavior.

65. As a result of Defendant's actions, Plaintiff developed stress-related hypertension, clinical anxiety disorder, migraines and insomnia and sought treatment on numerous occasions.

## COUNT 1

**(Race Discrimination – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

66. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

67. By and through its conduct, Defendant discriminated against Plaintiff based on her race, in violation of Title VII.

68. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 2

**(Color Discrimination – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

69. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

70. By and through its conduct, Defendant discriminated against Plaintiff based on her color, in violation of Title VII.

71. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 3

### (Sex Discrimination – Title VII, 42 U.S.C. §§ 2000e *et seq.*)

72. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

73. By and through its conduct, Defendant discriminated against Plaintiff based on her sex, in violation of Title VII.

74. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 4

### (Race Discrimination – Md. Code. Ann. §§ 20-601 *et seq.*)

75. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

76. By and through its conduct, Defendant discriminated against Plaintiff based on her race, in violation of the MFEPA.

77. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 5

### (Color Discrimination – Md. Code. Ann. §§ 20-601 *et seq.*)

78. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

79. By and through its conduct, Defendant discriminated against Plaintiff based on her color, in

violation of the MFEPA.

80. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 6

**(Sex Discrimination – Md. Code. Ann. §§ 20-601 *et seq.*)**

81. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

82. By and through its conduct, Defendant discriminated against Plaintiff based on her sex, in violation of the MFEPA.

83. As a result of Defendant's discriminatory treatment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 7

**(Hostile Work Environment based on Race – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

84. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

85. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her race, in violation of Title VII.

86. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 8

**(Hostile Work Environment based on Color – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

87. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

88. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her, in violation of Title VII.

89. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage,

physical pain, emotional distress, and mental anguish.

## COUNT 9

**(Hostile Work Environment based on Sex – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

90. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

91. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her sex, in violation of Title VII.

92. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 10

**(Hostile Work Environment based on Race – Md. Code. Ann. §§ 20-601 *et seq.*)**

93. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

94. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her race, in violation of the MFEPA.

95. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 11

**(Hostile Work Environment based on Color – Md. Code. Ann. §§ 20-601 *et seq.*)**

96. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

97. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her color, in violation of the Maryland Fair Employment Practices Act (MFEPA).

98. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 12

**(Hostile Work Environment based on Sex – Md. Code. Ann. §§ 20-601 *et seq.*)**

99. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

100. By and through its conduct, Defendant subjected Plaintiff to a hostile work environment based on her sex, in violation of the MFEPA.

101. As a result of Defendant's harassment, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 13

**(Retaliation – Title VII, 42 U.S.C. §§ 2000e *et seq.*)**

102. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

103. By and through its conduct, Defendant retaliated against Plaintiff for opposing discrimination, in violation of Title VII.

104. As a result of Defendant's retaliation, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## COUNT 14

**(Retaliation – Md. Code. Ann. §§ 20-601 *et seq.*)**

105. Plaintiff repeats and realleges the allegations above, as if fully set forth herein.

106. By and through its conduct, Defendant retaliated against Plaintiff for opposing discrimination, in violation of the MFEPA.

107. As a result of Defendant's retaliation, Plaintiff has suffered loss of pay, career damage, physical pain, emotional distress, and mental anguish.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all Counts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants on all Counts and award her lost wages and benefits, front pay; $300,000 in compensatory damages for pain and suffering, mental anguish, and emotional distress; pre-and post-judgment interest on the amount of any award; attorney's fees and litigation costs; and such other relief as the Court deems fair and just.

Dated: May 11, 2022

Respectfully submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

By: /s/Katherine Lease
Katherine Lease (#21561)
Alan Lescht (#12928)
1825 K Street, NW, Suite 750
Washington, DC 20006
katherine.lease@leschtlaw.com
alan.lescht@leschtlaw.com
(202) 463-6036